828 So.2d 602 (2002)
David P. LANASA, Clare P. Lanasa, for/on behalf the Estate of Debra Ann Lanasa, and her Minor Child, Tommy Jonathan Lanasa
v.
Michele A. HARRISON, Allstate Insurance Company, and the State of Louisiana through the Department of Transportation and Development.
Michele A. Harrison
v.
State of Louisiana, through the Department of Transportation and Development.
Nos. 2002-CA-0026, 2002-CA-0027.
Court of Appeal of Louisiana, Fourth Circuit.
August 7, 2002.
Writ Denied November 27, 2002.
*604 Robert A. Caplan, Lewis & Caplan, A PLC, New Orleans, LA, for Plaintiff/Appellee.
Maurice LeGardeur, Le Gardeur, Ltd., Covington, LA, for Michele A. Harrison-Leal.
Richard P. Ieyoub, Attorney General, Stephen J. Caire, Special Assistant Attorney General, Metairie, LA, for State of Louisiana, etc.
(Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
Judge DAVID S. GORBATY.
In this appeal, the State of Louisiana through the Department of Transportation and Development ("DOTD") contends that the trial court erred in rendering judgment in favor of the plaintiffs, and awarding them excessive damages. Michele Harrison Leal also appeals the fault allocated and damages awarded to her. Plaintiff answered the appeal and further appeals the allocation of fault by the trial court. For the reasons set forth below, we affirm.
FACTS AND PROCEDURAL HISTORY
On December 27, 1991 at approximately 4:50 a.m., decedent Debra Lanasa was driving south on the U.S. Highway 11 Bridge. The bridge was wet from previous and/or ongoing rainfall throughout the evening. Michele Harrison (now Leal) had just left work and was traveling in the northbound lane of the bridge towards Slidell. As Ms. Leal's vehicle encountered the steel grid deck on the south draw of the bridge, she alleges her vehicle began pulling to the left. She avers that as she tried to steer the car back to the right, she lost control of it as a result of the defective conditions of the bridge, causing her to proceed into the oncoming lane of traffic and into Ms. Lanasa's vehicle.
Mrs. Lanasa died upon impact. As a result of her death, plaintiffs David and Clare Lanasa initiated a wrongful death suit against Leal, her insurer Allstate Insurance Company, and the DOTD on behalf of Tommy J. Lanasa, the decedent's minor son. Upon reaching the age of majority, Tommy Lanasa filed a First Supplemental and Amending Petition reiterating and re-alleging all of the allegations previously made in the original Petition for Damages.
Leal also filed suit against the DOTD for the injuries she allegedly sustained as a result of the accident. After a trial on the merits, the trial judge allocated thirty-five percent (35%) of the fault in causing the accident to Ms. Leal, and sixty-five percent (65%) of the fault to the DOTD. The court awarded Tommy Lanasa $350,000 in general damages, $4,166.22 in funeral and inscription costs, and $97,067 for loss of economic support. The court also awarded Michele Leal $1,025,000 in general damages, $149,747.99 in past medical expenses, $40,000 in future medical expenses, $275 in mileage expenses, and $12,416.12 in past lost wages. Leal and the DOTD subsequently appealed.
DISCUSSION
In its first assignment of error, the DOTD argues that the trial judge erred in relying upon conclusions of expert witnesses, particularly Herman Hill, whose testimony was tainted by including references to documents excluded from *605 admission by 23 USCA 409. That law provides that any "reports, surveys, schedules, lists, or data compiled or collected" under specific federal law sections, or compiled for the purpose of a highway safety construction improvement project that "may be implemented utilizing Federal-aid highway funds" are not discoverable and cannot be admitted into evidence in a federal or state court proceeding.
Mr. Hill's testimony was based primarily on his many physical observations of the roadway in question and the skid resistance test results as completed by the State. When asked about the basis for his opinions regarding the hazardous nature of the roadway surfaces, he stated that they were based upon "generally accepted engineering practices and standards and literature." He further averred that his conclusions regarding failures to meet maintenance duties would have been the same had he not looked at any Louisiana Highway Department materials. Therefore, Mr. Hill appropriately relied upon data he perceived through inspection of the bridge prior to trial. The trial court's Reasons for Judgment reveal that its finding of liability was based upon the "many serious defects" on the bridge, and not upon any references to documents excluded by 23 USCA 409. This assignment of error is without merit.
Next, the DOTD argues that the trial court erred by not following LSA-R.S. 32:235(E), which provides that evidence showing that traffic warning devices are in compliance with appropriate design standards presents a prima facie proof of adequacy. Mr. Hill testified that inadequate warning signs were a defective condition on the bridge; however, the warning signs he suggested are not required by the Manual on Uniform Traffic Control Devices ("MUTCD"), the DOTD asserts. Dr. Humphreys testified that there was a yellow warning sign Ms. Leal would have encountered advising that she was approaching a steel grid deck ahead. As such, the DOTD was in compliance with its manual and thereby discharged its duty to Ms. Leal, they aver.
Mr. Hill testified that the State was not in compliance with the MUTCD. He stated that "slippery when wet" signs, according to the manual, "are to be installed on highway sections where there is a problem with skid resistance, and I don't believe this [was] done." He opined that the lack of such signs "would be a deficiency ... because the manual specifically says those type signs are to be placed where you have road surfaces with abnormal[ly] slippery conditions [in] wet weather." Ms. Leal also testified that there were no signs warning that the roadway was slippery when wet or to reduce speed.
The trial judge obviously chose to accept the testimony of Mr. Hill and disregard the testimony of Dr. Humphreys. It is well settled in Louisiana that the trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. Fountain v. Fountain, 93-2176, p. 5 (La.App. 1 Cir. 10/7/94), 644 So.2d 733, 738. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Id. The effect and weight to be given to expert testimony is within the broad discretion of the trial judge. Williams v. Rubicon, XXXX-XXXX (La.App. 1 Cir. 2/15/02), 808 So.2d 852. The trial judge did not abuse her discretion in relying upon Mr. Hill's testimony and concluding that the lack of warning signs contributed to the accident. As such, the DOTD's argument that La. R.S. 32:235(E) applies fails, since application of that statute requires compliance with the manual. This assignment of error lacks merit.
*606 The DOTD next contends that the trial judge erred in finding that the bridge had many serious defects that were unreasonably dangerous and a contributing cause to Mrs. Leal losing control of her vehicle.
The standard of review is manifest error in cases where unreasonable risk of harm is at issue. Reed v. Wal-Mart, 97-1174 (La.3/4/98), 708 So.2d 362. The trial court's findings are reversible only when there is no reasonable basis for the conclusions, or they are clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).
In this case, the trial court found that the bridge was unreasonably dangerous because of the combination of dangerous defects that were allowed to accumulate by DOTD. These defects included substantial rutting of the asphalt surface on the bridge; puddling of water in the roadway; worn grids on the south draw approach that had not been replaced since 1947; varying types of roadway surfaces on the south draw approach that produced an irregular surface; varying levels of elevations between the roadway and grating on south draw approach; missing bars on the steel grids; noticeably worn-down wheel paths; a lack of warning signs to alert drivers of the hazards of the roadway condition; and no shoulder or recovery zone for drivers experiencing difficulties. After reviewing the evidence and testimony from expert and lay witnesses presented at trial, we find that the record supports the trial court's conclusions, and they are not clearly wrong. This assignment of error is without merit.
The DOTD further argues that the trial judge erred and abused her discretion in sustaining an objection to the introduction of an exhibit, marked DOTD Proffer No. 1, and related testimony, a videotape allegedly proving that no loss of control is caused by the conditions of the bridge while driving in darkness, during heavy rain, strong wind, and puddles.
The trial judge excluded the videotape because it was completed beyond the trial court's scheduling order that cut off bridge testing by either side on February 4, 2000, before the experts' depositions were scheduled. The video was finished on November 8, 2000, less than a month before trial and nine months after the discovery cutoff date. As such, we find that the trial judge did not abuse her discretion in excluding this videotape.
The DOTD also argues that the trial judge erred by ignoring the Daubert-Foret "gatekeeper" role of screening evidence to ensure that it is not only relevant, but also reliable by accepting improper expert testimony and rejecting proper expert testimony. Specifically, DOTD avers that the trial judge should have rejected the testimony of Mr. Burkhardt and Mr. Hill, which "miserably failed to satisfy the Daubert-Foret factors," and accepted the testimony of Dr. Humphreys.
As discussed earlier, expert credibility findings by the court should not be disturbed on review in the absence of manifest error. General Electric Co. v. Joiner, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). The effect and weight to be given expert testimony is within the broad discretion of the trial judge. Williams v. Rubicon, XXXX-XXXX (La.App. 1 Cir. 2/15/02), 808 So.2d 852. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Fountain v. Fountain, 93-2176 (La.App. 1 Cir. 10/7/94), 644 So.2d 733. Furthermore, once the expert is permitted to testify in his field, the acceptance or rejection of the expert's opinion depends on the credibility of the witness. Schexnayder v. Exxon Pipeline Co., 01-1236 (La.App. 5 Cir. 3/13/02), 815 So.2d 156. Credibility determinations, *607 including the evaluation and resolution of conflicts in expert testimony, are factual issues to be resolved by the trier of fact, which will not be disturbed on appeal in the absence of manifest error. Corley v. State Dept. of Health & Hospitals, 32,613 (La.App. 2 Cir. 12/30/99), 749 So.2d 926. Therefore, once the expert witnesses in the case at bar were permitted to testify without objection by DOTD, the weight given to their testimonies was within the broad discretion of the trial judge. All of the plaintiffs' expert witnesses were well qualified in their fields. We cannot say that the trial judge was manifestly erroneous in her acceptance and rejection of various experts' testimonies. This assignment of error lacks merit.
In its final assignment of error, the DOTD argues that the trial judge abused her discretion and was manifestly erroneous in awarding excessive damages inconsistent with the evidence to both Lanasa and Leal. DOTD suggests that the general damage awards are so high as to constitute an abuse of discretion. Further, it contends that the $40,000 award for future medical expenses for Ms. Leal's future hip replacement is speculative. Ms. Leal, in her first assignment of error, likewise argues that the trial court erred in its damage award to her, but avers that it was an inadequate measure of general and special damages for her injuries and expenses.
The trier of fact is given much discretion in the assessment of damages. Damage awards will not be disturbed on appeal unless there has been a clear abuse of that discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). If, and only if, the award is beyond what a reasonable trier of fact would award, then it is proper to resort to prior awards for the purpose of determining the highest or lowest point that is reasonably within that discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261.
In the instant case, the trial court did not give a specific explanation for Tommy Lanasa's award in her Reasons for Judgment. However, the evidence and testimony support the award in light of the emotional trauma he experienced as a result of his mother's death.
Ms. Leal's injuries included multiple fractures of the pelvis; traumatic shock; multiple jaw fractures that required the wiring of her jaw; a fractured left foot; multiple forehead, chin, and lip lacerations; and a permanent limp. She continues to have hip pain, and will one day have to have a total hip replacement. Further, Ms. Leal testified that because of her pelvic injuries, she experienced pregnancy complications. Considering all of these factors, we cannot say that the amount of general damages awarded to Ms. Leal constituted an abuse of discretion by the trial judge. As such, the award should neither be increased nor decreased. These assignments of error are without merit.
Leal avers that the trial court erred in casting her in judgment after she was dismissed as a defendant due to bankruptcy. We disagree, and find that the trial court did not err in quantifying Leal's degree of fault.
Leal and plaintiff argue that the trial court erred by not allocating one hundred percent of the fault to the DOTD under the Watson factors and the "sudden emergency" rule.
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). Apportionment of fault is a question of fact, subject to the manifest error/ clearly wrong standard of review. Guillot v. Valley Forge Ins. Co., 99-1044, p. 3 (La.App. 3 Cir. 12/8/99), 753 So.2d 891, 893.
*608 In her Reasons for Judgment, the trial judge explained:
[A]ll of these conditions produced an unreasonably dangerous drawbridge, which, in addition to the inclement weather conditions, caused Ms. Leal to lose control of her vehicle. In an effort to maneuver her car back into the northbound lane of traffic, Ms. Leal negligently overcorrected to the right as per her own testimony. This over correction, along with the dangerous conditions of the roadway, caused Ms. Leal to once again lose control of her vehicle and subsequently cross back into the southbound lane and impact Ms. Lanasa's vehicle head on.
Considering all of the evidence and testimony, we cannot say that the trial judge's reasoning and conclusions are manifestly erroneous. The record supports the apportionment of fault as set forth by the trial judge.
CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.