JjLEON A. CANNIZZARO, JR., Judge.
This case involves an appeal from a judgment in favor of the defendant in a personal injury action arising out of a fall by one of the plaintiffs at the defendant’s place of business. The plaintiffs are appealing the judgment dismissing their claims.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
After watching a Mardi Gras parade in downtown New Orleans, Leonhard H. Goll, III and his wife, Kathleen G. Goll, went to Bugsy’s Bar & Grill with a group of their friends and relatives. They went to listen to a band that was playing there that night.
The Golls followed the other members of their party into Bugsy’s, and Mr. Goll was the last to enter the restaurant. On his way to the table where his party was seated, Mr. Goll walked past a jukebox and a stage to which was attached a set of stairs. Mr. Goll’s attention was focused on the band that was playing, and he fell forward when he tripped on the stairs attached to the stage. When he fell, he pulled his wife down with him. After the Golls recovered from the fall, they walked to the table where their party was seated. All of them had navigated essentially the same path as the Golls without incident.
_[¿Mr. Goll suffered a cut near his eye from the fall, and Mrs. Goll tore her pants. The Golls filed suit against Bugsy’s, claiming damages from serious knee and back injuries suffered by Mr. Goll in the fall and from Mrs. Golfs loss of consortium with her husband due to his injuries. The Golls alleged in their suit that the steps upon which Mr. Goll tripped were hidden and that Bugsy’s was negligent in not making the steps more visible and in not removing the steps, because the stage to which they *343 were attached was not used in Bugsy’s business.
The trial court found that Mr. Goll’s fall was caused by his failure to watch where he was going and not by any negligence on the part of Bugsy’s. The Golls are now appealing the trial court’s judgment dismissing their claims.
DISCUSSION
Standard of Review
In Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court discussed the scope of the appellate court’s review of a trial court’s findings of fact as follows:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong....
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
| SM at 844. See also Harvey v. Cole, 2000-1849 (La.App. 4 Cir. 1/23/02), 808 So.2d 771.
With respect to issues of law, however, this Court is required to determine whether the trial court applied the law appropriately. In Glass v. Alton Ochsner Medical Foundation, 2002-0412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, 405, writ denied, 2002-2977, 2002-3018 (La.3/14/03), 839 So.2d 36, 839 So.2d 37, this Court stated that “[t]he standard of review of appellate courts in reviewing a question of law is simply whether the court’s interpretative decision is legally correct.” Additionally, if a trial court’s decision is based on an erroneous application of the law, the decision is not entitled to deference by the appellate court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071-1072 (La.1983). See also Sander v. Brousseau, 2000-0098, p. 4 (La.App. 4 Cir. 10/4/00), 772 So.2d 709, 711, where this Court stated that “[ajppellate review of a question of law involves a determination of whether the lower court’s interpretive decision is legally correct.”
Assignments of Error
The Golls list three assignments of error in their brief. The Golls have divided these three assignments of error into several parts, and we will discuss each of those parts below.
Assignment of Error: The trial court erred in finding that plaintiffs’ expert, Emory Hegidus, admitted that the stairs did not protrude into the walkway aisle.
The Golls contend that the trial court erred by finding that their architectural expert, Emory Hegidus, admitted that the stairs leading to the stage did not protrude into the walkway. In her reasons for judgment, the trial court judge stated Lthat “even the plaintiffs expert admitted that the stairs did not protrude into the walkway aisle.”
Mr. Hegidus, the architectural expert testifying on behalf of the Golls, testified at trial as follows:
*344 Q. And you agreed with me when we were talking that if there was a row of tables that doesn’t appear here, if that row of tables was more than three feet away from these stairs, that the stairs would not be an obstruction as you’ve defined it under the codes, right?
A. That is correct.
Q. Okay. But here there aren’t any tables at all so there aren’t any obstructions, because there’s no tables here, so it’s — it’s well over — you’ve been in the building, right?
A. Yes.
Q. This distance from here to the other set of supporting columns is well over thirty-six inches, isn’t it?
A. Oh, well, yes.
Q. Right.
A. Way over.
Q. So there is no obstruction here, is there?
A. No.
Based on the foregoing testimony, we find that the trial court judge was neither clearly wrong nor manifestly erroneous in determining that the Golls’ architectural expert testified that the stairs to the stage did not protrude into the walkway in front of the stage. Therefore, we must defer to the trial court’s findings of fact on this issue.
^Assignment of Error: The court erred when it determined that there was no evidence that the stairs in question violated any building or life safety codes.
The Golls’ expert in the field of architecture testified that the stairs attached to the stage violated the applicable building and safety codes, because the stairs did not have handrails and guardrails. George Hero, Bugsy’s expert in the field of architecture, testified that although stairs are generally required by the building and safety codes to have handrails and guardrails, stairs that lead to a stage are specifically exempt from these requirements, because handrails and guardrails would obscure the performance on a stage. The trial court judge stated in her reasons for judgment that “[tjhere is no evidence that the stairs in question violated any building or life safety code.” The judge also found that the purpose of handrails and guardrails was to protect persons going up and down the stairs, not to prevent persons from tipping over the stairs.
In Lanasa v. Harrison, 2002-0026, 2002-0027 (La.App. 4 Cir. 8/7/02), 828 So.2d 602, writ denied, 2002-2512 (La.11/27/02), 831 So.2d 286, this Court discussed the evaluation of expert testimony by a trial court as follows:
It is well settled in Louisiana that the trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. A trial court may accept or reject in whole or in part the opinion expressed by an expert. The effect and weight to be given to expert testimony is within the broad discretion of the trial judge.
2002-0026, 2002-0027, p. 4, 828 So.2d at 605 (citations omitted).
In the instant case, the trial court chose to accept the testimony of Bugsy’s expert and to reject the testimony of the Golls’ expert. This choice was clearly within the trial court’s discretion, and we will not disturb her decision on this issue.
| ^Assignment of Error: The trial court erred when it noted that Goll testified that he was not looking where he was going and that he did not know what he tripped on.
The Golls contend that the trial court judge incorrectly found that Mr. Goll was not paying attention to where he was walking when he tripped on the stairs. In her reasons for judgment, the trial court *345 judge stated that “Mr. Goll admitted that he wasn’t looking where he was going.” The judge also stated that “Mr. Goll testified that he was so excited about seeing the band ‘Coffee’ which was playing [sic] the back of the bar, that he doesn’t even know if he actually tripped on the steps.”
In his testimony, Mr. Goll admits that he did not see the steps, that he was not looking down when he tripped, even though Bugsy’s was dimly lit, and that the band in Bugsy’s was “the center of my attention.” Mr. Goll stated further that he was “focused on the band” when he entered Bugsy’s. Based on Mr. Golfs testimony, we find that the trial court judge could reasonably infer that Mr. Goll was not attentive to where he was walking. Therefore, her finding was neither manifestly erroneous nor clearly wrong, and it will not be disturbed on appeal by this Court.
The Golls also object to the trial court’s finding that Mr. Goll did not know whether he tripped on the stairs to the stage or fell because of some other reason. Mr. Goll testified at the trial that when he fell, he initially did not know what caused him to fall. He further testified that only after he was sitting at a table in the restaurant did he actually see the stairs. Upon further investigation, he concluded that his fall must have been caused by his tripping on the stairs.
Based on Mr. Golfs testimony, the trial court’s finding that Mr. Goll did not know whether he tripped on the stairs may be reasonably inferred. There were no [ 7eyewitnesses to the fall, and Mr. Goll himself stated that when he fell, he was not sure what caused him to fall. Further, Mr. Goll testified that he “just did not see” the steps when he was walking to the table where his party was seated. Although it may be reasonably inferred that Mr. Goll did, in fact, trip on the steps, his testimony supports the trial court’s conclusion that he did not know this with absolute certainty.
Assignment of Error: The trial court erred when it based its opinion on the fact that 10 people in this party managed to navigate the same route without tripping.
The Golls argue that the fact that other people did not trip on the steps does not mean that the steps did not create an unreasonable risk of harm. Mr. Goll, however, testified that the other members of his party followed the same path that he did. Therefore, the trial court is entitled to consider this fact in making a determination regarding the risk posed by the steps.
Assignment of Error: The stage and step were of no use to Bugsy’s and served no purpose for this business establishment.
The Golls argue that the stage and the steps attached to it served no purpose for Bugsy’s business and, therefore, had no social utility. At the trial one of Bug-sy’s owners testified that a prior proprietor of the premises where Bugsy’s was located had operated a club where performers used the stage to entertain the club’s patrons. He further testified that at the time of Mr. Golfs fall, Bugsy’s had been in business for only a short period of time and that its owners had not yet determined the exact focus of their business. Therefore, they had left the stage in place until they had decided to emphasize the restaurant aspect of their business and needed the space occupied by the stage for additional tables. At that time they removed the stage.
|sIn Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285 (La.1991), the Louisiana Supreme Court discussed as follows the *346 consideration to be given to the social utility of a thing in determining whether the thing creates an unusual risk of harm:
Although courts, including this court, have described the unreasonable risk of harm criterion as requiring the court to balance the likelihood and magnitude of harm against the utility of the thing, the balancing test required by the unreasonable risk of harm criterion does not lend itself well to such neat, mathematical formulations. In addition to the likelihood and magnitude of the risk and the utility of the thing, the interpreter should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiffs conduct at the time of the accident.
Id. at 1289 (footnote omitted). See also Baker v. Murphy Oil USA, Inc., 2001-1299, p. 10 (La.App. 4 Cir. 4/10/02), 816 So.2d 329, 334.
In the instant case the social utility of the stage was just one of the factors that the trial court could consider in determining liability. The trial court was not, however, bound by neat, mathematical formulations of liability based on that social utility. In the instant case, the trial court decided that the lack of social utility was not dispositive of the issue of liability in this case, and we agree with that decision.
Assignment of Error: The steps, stage, and inadequate lighting created an unreasonable risk of harm.
There are two statutes that are pertinent to a determination of Bugsy’s liability for the condition of the steps that were attached to the stage. They are La. R.S. 9:2800.6 and La. C.C. art. 2317.
1 aMerchants Liability
La. R.S. 9:2800.6(A) provides as follows:
A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
The term merchant is defined in La. R.S. 9:2800.6(C)(2) to mean one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. Because Bugsy’s sold food on its premises, it is a merchant for purposes of La. R.S. 9:2800.6.
La. R.S. 9:2800.6(B) establishes the burden of proof required of a plaintiff lawfully on a merchants premises who sustains damages as a result of a fall allegedly caused by a condition existing on the premises. To recover damages the plaintiff must prove that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
All three elements must be proven for a plaintiff to carry the burden of proof required.
| inCustodians Liability
La. C.C. art. 2317 provides that [w]e are responsible, ... for the damage occasioned by ... the things which we have in our custody. La. C.C. art. 2317.1 establishes *347 the burden of proof required of the plaintiff in an action under La. C.C. art. 2317.
Article 2317.1 provides in relevant part as follows:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care

Determination of Unreasonable Risk of Harm

In the instant case we must determine whether under La. R.S. 9:2800 and La. C.C. art. 2317, the steps attached to the stage created an unreasonable risk of harm, thereby imposing liability on Bugsy’s for the Goll’s injuries. In Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002, the Louisiana Supreme Court stated that there is no fixed rule for determining whether something presents an unreasonable risk of harm. The Supreme Court then listed some of the factors to be considered in making the determination. These factors include (1) the claims and interests of the parties; (2) the probability of the risk occurring; (3) the gravity of the consequences; (4) the burden of adequate precautions; (5) individual and societal rights and obligations; and (6) the social utility involved. 99-3651 at p. 14, 765 So.2d at 1012.
The Supreme Court also stated that [n]ot every imperfection or irregularity creates an unreasonable risk of injury. Id. The Supreme Court further stated that Inthe fact that an accident occurred because of a vice or defect does not elevate the condition of the thing to that of an unreasonably dangerous defect. 99-3651 at p. 14, 765 So.2d at 1012-13. Finally, the Supreme Court concluded that [t]he vice or defect must be of such a nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. 99-3651 at pp. 14-15, 765 So.2d at 1012-13.
Applying the principles contained in the Dupree case, we find that in the instant case the trial court was not manifestly erroneous or clearly wrong in making the factual findings that she made. The trial court found that the steps did not create an unreasonable risk of harm, because they did not violate any building codes, and they were not in the middle of a walkway but were instead on the side of an area used as an aisle that was sufficiently wide to be traversed without interference from the steps. The trial court also determined that Mr. Goll was not paying sufficient attention to where he was walking when he tripped.
Because Bugsy’s was dimly lit to create the ambiance desired by its patrons, and because there was a band playing that obviously created a distraction, we find that a prudent person using ordinary care under these circumstances would be very careful in walking along a darkened path and would concentrate on navigating that path until he or she was seated rather than directing his or her attention to a band playing across the room. Mr. Goll failed to exercise ordinary prudence by diverting his attention from where he was walking to the band that was playing, and, as a result, unfortunately, he fell. This accident was not caused by a dangerous condition or an unreasonable risk of harm.
I ^CONCLUSION
Based on the foregoing discussion, we conclude that it was reasonable for the trial court judge to find that the steps *348 were not dangerous and that the conditions in Bugsy’s at the time of the accident did not create an unreasonable risk of harm. Therefore, we affirm the judgment of the trial court.
AFFIRMED.