MARION F. EDWARDS, Judge.
_JjThis appeal arises from the denial by the trial court of a Motion to Enforce Settlement Agreement and Judgment. The underlying facts were summarized in a previous opinion[1] by this Court as follows:
Certain owners of property near the New Orleans International Airport filed a class action alleging the constructive taking of their property because the noise and general inconvenience of operating the airport had rendered their property useless and essentially “taken” by the airport. On January 11, 1989, a Settlement Agreement was entered into. According to the Settlement Agreement, the City of New Orleans and the New Orleans Aviation Board agreed to purchase the properties, which were identified in a study and designated as Subclass “A” and “B”, with federal grant money as the funds became available. The amount of the attorneys’ fees was to be decided by the Court, however, the Settlement Agreement did provide that the fees would be due upon receipt of the individual benefits by the class members.
On May 31, 1989, a judgment was issued by the trial court approving the Settlement Agreement, including an Addendum to the agreement, and adopting the agreement as the judgment of the court. On October 27, 1989, the trial court rendered another judgment entitled Ruling on Motion to Set Attorney’s Fees. In that | .judgment, the trial court stated that the class members, whose property is purchased by The New Orleans Aviation Board, shall pay six percent (6%) of the individual benefits received, to the Class Counsel for attorneys’ fees. The judgment further stated that the 6% of the purchase price shall constitute a lien on the property purchased. The agreement, along with the judgments rendered by the court, were filed in the mortgage records on October 27, 1992.
The Settlement Agreement applied to those members of the class who did not opt-out of the proceeding, and further provided that:
This Settlement Agreement also binds the Aviation Board and future owners of designated property subject to this Settlement Agreement who obtain ownership of said property for the Present Class Members or their successors or assigns (hereinafter ‘Future Class Members’).
Notice of this Class Action for Settlement Purposes Only shall be provided to Future Class members by recordation of this “Settlement Agreement” with the Clerk of Court and the ex officio Registrar of Conveyances and Recorder of Mortgages for the [Pjarishes of Jefferson and St. Chariest,] respectively, or in some other form and manner sufficient to provide proper notice to Future Class Members of the Settlement Agreement.
The Addendum to the Settlement Agreement added the following to the *573 above paragraph: “Additionally, Future Class Members will be given an opportunity to opt-out, and all other necessary due process rights in accordance with procedures to be established by the Court.”
Paragraph 6 of the Agreement provided that notice would be directed by the Court to the potential Present Class Members by mailing to “all members who can be identified through reasonable efforts” informing them of several factors, including information about the terms of the Settlement Agreement and that the Settlement would be binding on all Present Class Members. Potential Present Class Members would be included “if he/she does not request to opt out by a | ¿specified date, and in accordance with the provisions of this Settlement Agreement. The Court will specify the terms and provisions for opting out....”
With regard the procedure for opting-out, the Agreement stated:
Potential Present Class Members of Subclasses A and B shall be given the opportunity to disclaim their interest in this Settlement Class and shall be disassociated therefrom upon providing formal written notice, opting out of the Class in a written “opt-out” notice.... The period for opting out shall begin on the date written notice is first mailed and shall continue for a period of thirty (30) days thereafter ... an official recipient designated by the Court must receive the Notice of Opting Out from said potential Present Class Member.
At the time the Settlement Agreement was confected, the property at issue herein was owned by T.L. James & Co. (“James”). In 1998, James sold the property to Angelo Iafrate Construction (“Iaf-rate”), who then merged with and became James Construction Group (“James Construction”). RMGC Properties, L.L.C. (“RMGC”) was organized by Robert Merrick and Gregory Clayton on April 23, 2004 and purchased the James property from James on May 7, 2004. All parties agree that RMGC is a Future Class Member as defined in the Agreement. In December of 2005, RMGC entered into a Property Exchange Agreement with the City of New Orleans. The Act of Exchange was executed in June 2006. It is on this Exchange that Class Counsel seeks to enforce the six percent (6%) attorney’s fee.
The Agreement classified the airport properties as subclass “A” and Subclass “B,” according to the aircraft noise impact. The James property was, in accordance with the Agreement, classified as a subclass “B” property. There is no dispute that James did not opt-out of the class with regard to the Kenner property, although it did so on property it owned in St. Charles Parish. Class Counsel’s position is that because neither James, Iafrate, nor RMGC opted out of the class, |fithe terms of the Settlement Agreement are enforceable against RMGC. RMGC argues that Notices of the Settlement and of the OpMJut Agreement were not sufficient with regard to Future Class Members. Following a hearing, the trial court found in favor of RMGC.
Class Counsel argues that it complied with all the notice requirements of the Agreement. Henry Klein (“Klein”), testifying at the trial on behalf of Class Counsel, stated that, at the time the Agreement was finalized, a large notice of the Agreement was published in the newspapers and notices were posted in various public facilities. An opt-out card was sent to Present Class Members, and the newspaper notice also contained an opt-out form. In addition, people were told they could opt out simply by writing a letter to the opt-out clerk at the Clerk of Court’s Office. Class Counsel also recorded the Agreement in the conveyance and mortgage records of *574 Jefferson and St. Charles Parishes. Klein further stated that it was the duty of the New Orleans Aviation Board (“NOAB”) to inform everyone that there would be a fee due if the property was transferred from any Future Class Member. According to Klein, in order for a Future Class Member, such as RMGC to opt-out, all they had to do is write a letter and send it to the opt-out clerk at the Clerk of Court’s Office. Klein testified there were no opt-out cards prepared for Future Class Members as there had been for Present Class. There were no newspaper publications after 1989, and no notices were sent out to Future Class Members. Class Counsel then apparently relied on the recordation of the Agreement and on notice from the NOAB to a seller at the time of any transfer.
RMGC received notice of the existence of the Agreement in May 2005, after its acquisition of the James property, but pri- or to the Exchange Agreement. Michael Schneider (“Schneider”), the attorney who represented RMGC in the Exchange Agreement, testified that David Halpern (“Halpern”), who represented | fithe NOAB, first informed him about the Settlement in May of 2005. Schneider requested that Halpern forward any materials in connection with the matter, and, on May 23, 2005, Schneider received a copy of the judgment adopting the Settlement.
The December 2005 Exchange Agreement contains a paragraph devoted to the Class Counsel Fee Dispute Therein it is stated that RMGC received a letter, dated June 10, 2005, from Klein pertaining to the award of attorney’s fees in the Settlement. The paragraph further states in that letter that Klein alleged that payment to class counsel would be due from RMGC if the exchange of the Exchange Properties occurs. “RMGC LLC has not determined whether any fees are due, whether there is any basis to challenge the fees, and, if any fees are due, the amount of the fees. RMGC reserves the right to dispute the payment of any fees to the class counsel in the Ursin litigation.... ” RMGC agreed to indemnify the NOAB against the amount of any fee and established an escrow account for 110 percent of the fee claimed.
In July 2006, after the Exchange was completed, Schneider communicated via email with Klein, stating that he noticed the opt-out procedure for Current Class Members and inquired as to whether T.L. James, Iafrate’s and James Construction’s predecessor in title, had opted out. He also noted that, according to the Agreement, Future Class Members would be given the opportunity to opt-out. Schneider requested that Klein inform him of the procedures that were adopted by the court for Future Members. Klein replied on July 11, answering that he was unaware that James was the predecessor in title to Iafrate. As to Future Class Members, the issue had never arisen, and that the matter would be researched. Schneider testified that he did not hear from Klein again. Thus, it appears that, at 17least as late as July 11, 2006, a definitive opt-out procedure for Future Class Members was still unresolved.
A lien affidavit, dated October 12, 1992 sworn by Klein on behalf of Class Counsel, and Patricia C. Malone, representing NOAB, was submitted into evidence. The affidavit referred to the Settlement Agreement and attorney’s fees and listed, according to the public records, “those persons in Class “A” affected hereby....” The James property was not listed as it was designated Class “B.” Klein testified that Noise Contour maps of the Class B properties were not recorded in the mortgage and conveyance office.
Michael Mancuso (“Maneuso”), an attorney qualified as an expert in title examina *575 tions, testified that, although the lien was recorded, the recordation did not attach to the property in question. Mancuso explained his method of title research, and concluded that there was no indication of the lien on the indexes, under the names of any owners of the James property.
Thomas Donelon (“Donelon”), a title expert called by Class Counsel, testified that a reasonable title examiner should have discovered the lien. He stated that in purchasing the James property with an eye toward an exchange for the NOAB property, RMGC should have checked NOAB’s title. Donelon would have found the affidavit, which listed the NOAB property.
In granting judgment in favor of RMGC, the trial court reasoned that the Agreement provided for notice to Future Class Members through recordation or “in some other form and manner.”
Class Counsel did not establish “some other” provision for notification of Future Class Members, and[,] therefore[,] relied solely on recordation. Recordation was not accomplished in a manner which would provide notice of the class settlement to those individuals contemplating a transaction involving the James Property. By invoking “recordation” as the standard for ^notification to members of the Future Class, Class Counsel obligated itself to record the Settlement Agreement in such a manner as would make it able to be found by a customary title examination....
The Addendum to the Settlement Agreement contemplates the creation of additional procedures by which Future Class members could have opted out of the class. No such mechanism was ever created or implemented. The record establishes that RMGC’s counsel specifically requested information regarding the opt out of Future Class Members, but that no information was provided by Class Counsel. “[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an ‘opt out’ or ‘request for exclusion’ form to the court.”[2]
At the time the Settlement Agreement was confected, notice of a proposed dismissal or compromise in a class action should be given to all members of the class “in such manner as the court directs.”[3] In the present case, the Agreement provided for notice to Future Class Members by recordation of the Agreement in the mortgage and conveyance offices of the respective parishes or “in some other form and manner sufficient to provide proper notice.” The Addendum provided that opt-out opportunities and all due-process rights would be provided to Future Members “in accordance with procedures to be established by the Court.”
The final judgment issued in connection with the Agreement determined that “Notice to the Class, as to form, substance and method of distribution, meets the requirements of Due Process ...” and that notice was approved and homologated. Inasmuch as the Agreement contemplated the establishment of procedures yet to be determined for Future Class members, that portion of the judgment could only apply to those notice methods already specified in the Agreement.
Class Counsel avers that the procedure for opting-out as outlined in the Agreement is applicable to and sufficient for *576 Future Class Members, as it was for | nthen-Current Members. According to Mr. Klein, all RMGC had to do to exercise its option was to write a letter to the opt-out clerk. The document requires a Class Member to submit a formal written “opt-out” notice within thirty days of the mailing of the written Notice of the Settlement. That Notice of Settlement was to contain certain information, including the composition of the subclasses, information about the terms of the Settlement, including the advantages and disadvantages, and the details regarding the payment of attorney’s fees. There is nothing to establish that the requisite Notice of Settlement was provided to RMGC in the present case. No opt-out card was provided to RMGC at any stage of these transactions. On examination, the only provision in the original Agreement for notice to Future Members is through recordation or “some other form and manner.”
Although the Agreement was duly recorded, the record establishes that the lien was never recorded as an encumbrance on the tract of land at issue. The affidavit relative to the lien admitted into evidence was limited to “Class A” properties. There is nothing to show that the Settlement was similarly recorded as to the “Class B” properties. The LDN noise exposure map was not recorded against Class B properties. The trial court accepted the expert opinion that the Agreement was not recorded in such a manner as would identify it with the James’ property chain of title and would not have been located by a title examiner through ordinary custom and practice. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part.[4] The effect and weight to be given expert testimony is within the broad discretion of the trial judge,[5] and we see no |10abuse of discretion in this case. At least as to the James property, recordation so as to afford notice was not accomplished.
Because the only specific directive from the court regarding notice in this case required recordation, we are, thus, left to interpret the nebulous instruction of “proper notice in some other form or manner” regarding RMGC.
Klein testified that, during negotiations for the exchange in May of 2005, RMGC obtained actual knowledge of the existence of the settlement from counsel for the NOAB. Counsel then sent Schneider a copy of the final judgment adopting the Settlement. The fee dispute was acknowledged in the Act of Exchange.
The mailing of the Judgment and of the Settlement documents arguably constitutes informal or unofficial notice.[6] Even so, the simple fact is that, for whatever reason, the procedures for Future Members to opt-out as envisioned by the Settlement Agreement were never established. In June 2005, Schneider requested information on the opt-out procedure. No response beyond Klein’s admission that the situation was unprecedented and his promise to research the issue was ever forthcoming. As the trial court implicitly found, RMGC was not provided with a vehicle to exercise its option and an opportunity to remove itself from the class by executing an “opt-out” or request for exclusion form to the court.[7]
*577 For the foregoing reasons, the Judgment denying the Motion to Enforce Settlement is affirmed. We remand the matter to the trial court with instructions to determine proper opt-out procedures as per the Addendum and to provide RMGC a reasonable opportunity to comply with such.
|nRMGC answered the appeal with a request for damages for a frivolous appeal. Because of the findings herein, the answer is denied.

AFFIRMED; REMANDED WITH INSTRUCTIONS.

. Ursin v. New Orleans Aviation Bd., 04-885 (La.App. 5 Cir.2005), 902 So.2d 508, 509, writ denied, 2005-1349 (La.12/9/05) 916 So.2d 1065.

. Citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

. Former LSA-C.C.P. art. 594. See also, present article LSA-C.C.P. art. 594(A)(2).

. Green v. K-Mart Corp., 03-2495 (La.5/25/04), 874 So.2d 838.

. Lanosa v. Harrison, 2002-0026 (La.App. 4 Cir. in/02), 828 So.2d 602, writ denied, 2002-2512 (La. 11/27/02) 831 So.2d 286.

. See, e.g.. Speaks v. New York Life Ins. Co., 96-2483 (La.App. 4 Cir. 4/30/97), 693 So.2d 340, writ denied, 97-1516 (La.9/26/97), 701 So.2d 987.

. See, Phillips Petroleum Co., supra.