WICKER, J.
| ;In this appeal, plaintiff, Landis J. Camp, seeks review of a trial court judgment rendered following a hearing on exceptions of prescription and prematurity filed by defendant, Chris J. DiGrado, M.D. Because we find Mr. Camp’s petition prescribed on its face and because Mr. Camp has failed to submit any evidence to show the action is not prescribed, we find the district court appropriately sustained Dr. DiGrado’s exception of prescription. Accordingly, we affirm the district court’s judgment.
FACTUAL AND PROCEDURAL BACKGROUND
In September 2002, Landis Camp sustained an injury to his right rotator cuff in a work-related accident in Baltimore, Maryland. Mr. Camp subsequently initiated workers’ compensation proceedings with the Maryland Workers’ Compensation Commission. Following this accident, Mr. Camp returned home to New Orleans. He began treating with Dr. Chris J. DiGrado in 2005.
On January 28, 2010, Dr. DiGrado performed surgery to repair Mr. Camp’s right rotator cuff. During Mr. Camp’s deposition, counsel for Dr. DiGrado questioned him about whether he knew Dr, DiGrado did not perform this surgery correctly in 2010. Mr. Camp responded, “Yes, sir. Then, I took another chance—excuse me— I took another chance in 2011, giving the justice [sic] to see could he fix my problem, and he refused to fix my problem and cut my money off, which was wrong.” Dr. DiGrado performed a second rotator cuff surgery on Mr, Camp on March 31, 2011. Following this surgery, Dr. DiGrado ordered an MRI of Mr. Camp’s shoulder on September 27, 2011. Mr. Camp testified during his deposition that he received the MRI report a few days later and, at this point, knew Dr. DiGrado negligently performed his surgeries. On October 28, 2011, Dr. DiGrado signed a functional capacity evaluation, affirming that Mr. Camp had reached |2maximum medical improvement. According to Mr. Camp, on the basis of this functional capacity evaluation, he lost his workers’ compensation benefits from his 2002 work-related accident in Baltimore. Mr. Camp testified that, as of January 2012, he knew Dr. DiGrado was at fault for the loss of these benefits.
Dr. DiGrado treated Mr. Camp for the last time on December 21, 2011. According to Mr. Camp, on the advice of a physical therapist who worked with Dr. DiGrado, Mr. Camp went to see Dr. Michael O’Brien. Dr. O’Brien performed another surgery on Mr. Camp on August 8, 2012. Mr. Camp testified that Dr. O’Brien indicated to him that Dr. DiGrado committed malpractice:
The surgery, it had too many sutures and how it was bad and how he fix [sic] and the way he did the surgery. He did the surgery wrong, the same surgery wrong.
According to Mr. Camp, Dr. O’Brien commented that he receives many of Dr. DiGrado’s former patients. Mr. Camp explained that after Dr. O’Brien repaired his shoulder, he started to seek compensation for Dr. DiGrado’s alleged malpractice. Mr. Camp admitted contacting the Baltimore law firm of Goodman and Goodman, asking the firm to take his case against Dr. DiGrado. On October 16, 2012, Mr. Goodman responded with a letter informing Mr. *1057 Camp that the firm did not wish to represent him in the matter. On May 6, 2013, Mr. Camp penned a letter to attorney Leonard Fisher, seeking to engage Mr. Fisher to represent him in his medical malpractice case against Mr. DiGrado. Likewise, Mr. Camp sent a letter on June 26, 2013, to Donald LaRoche, requesting representation for his claims against Dr. DiGrado. Mr. Camp also mailed letters to the United States Supreme Court on December 13, 2013 and on April 7, 2014, concerning his claims against Dr. DiGrado. Mr. Camp also received a letter from attorney Jacqueline Campbell, on September 4, 2013, declining to represent him in this matter.
On February 27, 2015, Mr. Camp, proceeding in proper person, filed suit in the Twenty-Fourth Judicial District Court against Chris J. DiGrado, M.D., and his | .¡insurer, LAMMICO Insurance Company, alleging that he sustained injuries as a result of Dr. DiGrado’s medical malpractice. First, Mr. Camp alleged that Dr. DiGrado negligently performed the January 28, 2010 and March 31, 2011 rotator cuff surgeries. Second, Mr. Camp claimed Dr. DiGrado negligently determined that he had reached maximum medical improvement and signed a functional capacity evaluation to that effect. According to Mr, Camp, this negligence resulted in the loss of his Maryland workers’ compensation benefits and served as the basis for a settlement of his workers’ compensation case which Mr. Camp deemed to be unfavorable to him. Thereafter, on March 30, 2015, Mr. Camp filed a complaint with the Louisiana Patient’s Compensation Fund, seeking review by a medical review panel.
On October 30, 2015, Dr. DiGrado filed an exception of prescription and an alternative exception of prematurity. Dr. DiGrado alleged that he had performed surgeries on Mr. Camp’s right shoulder on January 28, 2010, and March 31, 2011, and had last treated Mr. Camp on December 21, 2011. Because Mr. Camp filed his suit more than three years after Dr. DiGrado had last treated Mr, Camp, Dr. DiGrado argued that Mr. Camp’s claims against him had prescribed pursuant to La. R.S. 9:5628. Alternatively, Dr. DiGrado argued that Mr. Camp’s suit was filed prematurely because his claims had not been reviewed by a medical review panel, pursuant to La. R.S. 40:1299.47.
On December 17, 2015, at the conclusion of a hearing on Dr. DiGrado’s exceptions, the district court granted Dr. DiGrado’s exception of prescription and found the exception of prematurity moot. The trial court signed a judgment to this effect.
On December 30,2015, Mr. Camp filed a motion for appeal of the trial court’s December 17, 2015 judgment. Upon review, we found the judgment the district court issued to be technically defective because it failed to dismiss Mr. UCamp’s claims with prejudice. Accordingly, we exercised our supervisory jurisdiction and remanded this matter for the district court to supplement the record with an amended judgment. On October 25, 2016, the district court supplemented the record with an amended judgment, granting Dr. DiGra-do’s exception of prescription, finding his exception of prematurity to be moot, and dismissing with prejudice all of Mr. Camp’s claims against Dr. DiGrado. It is from this judgment that Mr. Camp now appeals.
DISCUSSION
Mr. Camp seeks damages for injury “arising out of patient care” from Dr. DiGrado, a Louisiana physician. Thus, the prescriptive period set forth in La. R.S. 9:5628(A) applies to his malpractice claims:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, *1058 dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
In Campo v. Correa, 01-2707, p. 16 (La. 6/21/02), 828 So.2d 602, 509, the Louisiana Supreme Court succinctly explained,
[T]he statute sets forth two prescriptive limits within which to bring a medical malpractice action, namely one year from the date of the alleged act or one year from the date of discovery with a three year limitation from the date of the alleged act, omission or neglect to bring such claims.
Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Id. at 508. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Id. Prescription commences when a plaintiff obtains actual or |,^constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Id. at 510. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Id. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Id. at 510-11.
Dr. DiGrado last treated Mr. Camp on December 21, 2011. The Louisiana Medical Malpractice Act requires all medical malpractice actions against a qualified healthcare provider to be submitted to a medical review panel prior to filing the suit in a state district court. La. R.S. 40:1299.47; La. R.S. 40.1299.42; Martin v. Comm-Care Corp., 37,600, pp. 4-5 (La.App. 2 Cir. 10/16/03), 859 So.2d 217, 220. On February 27, 2015, Mr. Camp filed a petition for damages with the district court. Mr. Camp then filed with the Patient’s Compensation Fund a request for a medical review panel on March 30, 2015. On its face, the record is clear that Mr. Camp’s claims are prescribed because he filed his action more than three years after he ceased treating with Dr. DiGrado. Campo, 828 So.2d at 508 (“[I]n all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.”).
At the hearing on Dr. DiGrado’s exceptions, Dr. DiGrado submitted additional evidence, including Mr. Camp’s deposition and numerous exhibits, indicating Mr. Camp had actual knowledge of his claims as early as October 2011 and January 2012. Thus, based on Mr. Camp’s own admissions, his claims may have prescribed a year from those dates. Mr. Camp submitted no evidence that his claims were not prescribed. However, his brief seems to make some reference to the workers’ compensation proceeding in Baltimore. In his deposition, Mr. Camp explained that he has sought compensation from Dr. DiGra-do for his injuries since 2012. He asserted that he has not obtained relief because he “was going to | ^Baltimore, when I had to file [sic] Louisiana, down here.” Although the record suggests that Mr. Camp did attempt to raise his medical malpractice *1059 claims in the proceedings before the Maryland Workers’ Compensation Commission, these attempts could not and did not interrupt prescription. La. R.S. 40:1299.47(A).
Accordingly, because Mr. Camp’s claims are prescribed on their face and because he failed to submit any evidence to meet his burden that his claims have not prescribed, we affirm the district court’s judgment, granting Dr. DiGrado’s exception of prescription and dismissing with prejudice all of Mr. Camp’s claims against him.
AFFIRMED