Judge Roland L. Belsome
This is a tort case arising out of a motor vehicle accident. The trial court found the Defendant driver, Kristyn Harris, liable for the accident and awarded the Plaintiff, Dwayne Levine, $87,652.20 in damages. The Plaintiff and Defendant, Allstate Insurance Company, appealed the trial court's judgment. For the following reasons, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
The facts surrounding the accident are undisputed.[1] Preceding this accident, the *1288 Plaintiff was under an orthopedist's care for a pre-existing ankle injury, which required two surgeries. Subsequent to this accident, the Plaintiff underwent a third surgery to his right ankle, wound debridement and a skin graft.
The Plaintiff later filed a Petition for Damages. After a bench trial and the submission of post-trial briefs, the trial court issued a judgment in favor of the Plaintiff. In awarding damages, the trial court attributed fifty percent of the need for the third surgery to the subject accident; however, it did not award damages for the skin graft. In total, the Plaintiff was awarded $87,652.20: $37,652.20 in medical special damages and $50,000.00 in general damages. The Plaintiff and the Defendant filed cross-appeals on causation and the resulting damages. The Defendant does not challenge liability on appeal.
LAW AND ANALYSIS
The sole issue before this Court in the cross-appeals involves the amount of damages awarded. In particular, the Defendant argues that the Plaintiff's damages award should be substantially reduced because he did not establish a causal link between the third surgery and the instant accident; while the Plaintiff argues that the award should be increased because he established a causal link for fifty percent of the third surgery and the skin graft.
"Causation is a factual issue." D'Angelo v. Guarino , 10-1555, p. 6 (La. App. 4 Cir. 3/9/12), 88 So.3d 683, 688. "Although the Louisiana Constitution extends appellate jurisdiction in civil cases to both law and facts, the exercise of this power is limited by the jurisprudential rule that factual determinations of the trier of fact will not be set aside by a reviewing court unless they are manifestly erroneous or clearly wrong." Brewer v. J.B. Hunt Transp., Inc. , 09-1408, p. 9 (La. 3/16/10), 35 So.3d 230, 237. "To reverse a factfinder's determination ... an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong." Brewer , 09-1408, p. 12, 35 So.3d at 239.
" 'The test for determining the causal relationship between an accident and a subsequent injury is whether the plaintiff proved through medical and lay testimony that it is more probable than not that the subsequent injuries were caused by the accident.' " D'Angelo , 10-1555, p. 6, 88 So.3d at 687 (citation omitted). "It is well settled in Louisiana that the trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence." Lanasa v. Harrison , 02-0026, p. 4 (La. App. 4 Cir. 8/7/02), 828 So.2d 602, 605. "A trial court may accept or reject in whole or in part the opinion expressed by an expert." Id. And "[t]he effect and weight to be given to expert testimony is within the broad discretion of the trial judge." Id.
A review of the trial record reveals that the Plaintiff was involved in a previous accident in 2012 that required two surgeries to his right ankle: one for stabilization and one fusion. The triple arthrodesis (three bone fusion) took place in August of 2012. After the fusion, he was under the *1289 supervision of Dr. Ramon Rodriguez, his orthopedist, and was healing. In February of 2013, he saw Dr. Rodriguez and was doing well, reporting decreased pain. As a result, he was set for a follow-up visit in six months. The Plaintiff testified that during this time, his ankle was progressing "beautifully," in terms of healing; though he still had pain. He had recently started walking using a cane and was in the process of transitioning from a cam boot to a shoe.
On July 26, 2013, just before his six month check-up in August, the subject accident occurred. The Plaintiff explained that he re-injured his right foot in the subject accident when he slammed on the break in an effort to avoid the collision. Later in the evening, he began experiencing pain and went to the emergency room. He received a splint and pain medication until he could attend his August follow-up appointment with Dr. Rodriguez. At his follow-up visit with Dr. Rodriguez, he was given more pain medicine and physical therapy. A few weeks later, he saw Dr. Rodriguez again because he was "still in excruciating pain," and the pain was getting worse. The doctor's notation from this visit reflects that the Plaintiff had a contusion and complained of foot pain following the accident. A CT scan revealed that the sub-talar joint had not fused. As a result, Dr. Rodriguez performed a revision surgery in October of 2013 to fuse the joint and remove the metal implant from the previous surgery. The Plaintiff believed that he was having surgery because a "screw [that] was poking out of [his] skin." In late 2013, the Plaintiff underwent a graft procedure due to infection and wound care.
Dr. Rodriguez testified he could not definitely say one way or the other as to whether the non-union of the joint was caused by the accident. He did testify that the surgery was necessary due to the failure of the sub-talar joint to properly fuse and that most likely the joint never properly fused after the second surgery, which was related to the first accident.
However, Dr. Rodriguez also testified that he would not normally take out the metal implant, but since the Plaintiff had pain complaints, it was a cause for concern. He also testified that a trauma could dislodge the implant and cause pain. He ultimately testified that the implant removal could be related to the accident due to the increased pain complaints and discomfort. Significantly, he did not testify regarding the skin graft, other than that he sent the Plaintiff to wound care, where he believes the skin graft was performed before the Plaintiff's returning to him. No other medical expert testified at trial.
In support of his conclusion that causation was not met, the Defendant relies on Dr. Rodriguez's testimony that the third surgery was necessitated by the non-union of the sub-talar joint, which likely never fused after the second surgery. However, the Defendant ignores pertinent medical testimony that trauma could cause the metal implant to dislodge causing pain, and the implant removal could be related to the subject accident. This testimony coupled with the visible contusion and the Plaintiff's severe pain complaints after the accident support the trial court's judgment attributing fifty percent of the third surgery to the subject accident for the removal of the metal implant. Likewise, the lack of expert medical testimony in the record concerning the skin graft supports the trial court's decision that causation was not met relative to those damages.
The trial court weighed the strengths and weaknesses of the expert and lay testimony. Given that there is a reasonable basis in the record to support the trial court's conclusions concerning causation, we cannot say the trial court committed *1290 manifest error. Accordingly, the trial court judgment is affirmed.
AFFIRMED

On July 11, 2013, the Defendant driver was traveling towards uptown New Orleans in the right lane on St. Charles Avenue, approaching Lee Circle, near the intersection of Howard Avenue. Though the right lane of traffic must turn right onto Howard Avenue, the Defendant driver proceeded straight into the roundabout. Meanwhile, the Plaintiff was traveling in the left lane on St. Charles Avenue. As the Plaintiff attempted to make a legal right hand turn from the left lane, his van collided with the back door and rear tire of the Defendant driver's vehicle, who was driving straight in the turn only lane. The investigating officer issued a citation to the Defendant driver for improper lane usage.