Judge Daniel L. Dysart
Following a bench trial on July 26, 2017, a judgment was rendered on October 10, 2017, dismissing the petition for damages filed by Shawn McNeil, with prejudice, as to all defendants.[1] For the reasons that follow, we affirm the judgment.
BACKGROUND:
Shawn McNeil was a passenger on a Regional Transit Authority bus on February 18, 2013, when the bus was struck from behind by a truck owned by United Rentals (North America), Inc. ("United Rentals"), and driven by its employee, Jason Trosclair (hereinafter referred to collectively as "defendants").
Ms. McNeil claimed that she suffered injuries to her neck, lower back, shoulder and hip as a result of the accident. After being treated by several physicians and receiving injections and physical therapy, she underwent a discectomy in March of 2017.
Jason Trosclair, the driver of the truck that hit the bus, testified that he was stopped behind an RTA bus that was slightly in his lane of travel. When he realized that the bus would be stopped for an extended period of time, he attempted to go around it. He misjudged the distance needed to clear the bus, and bumped the right rear of the bus with his right side view mirror. He stated that the only damage to his truck was that the truck's mirror was folded in.
The bus driver testified that he heard a boom and felt the impact, which caused him to move in his seat. He said a couple of passengers told him they were injured, but he had no specific recollection of any of the passengers falling on the bus. The driver got off of the bus and spoke with *31 Mr. Trosclair. He stated that he did not see any damage to the United Rentals truck, but when the RTA inspector arrived, she noted a dent and some scratches to the rear corner of the bus.[2] According to protocol, the bus driver made a list of the passengers on the bus at the time. He testified that one passenger was taken away by ambulance. The driver stated that he made a claim for his own injuries and settled his claim.
Ms. McNeil testified that she had no prior health issues. She admitted that she injured her back in 1989 when a chair in which she was seated collapsed. Ms. McNeil testified that prior to this incident she worked as a housekeeper at a local motel where she cleaned eleven to nineteen rooms per day.
When asked at trial to describe what happened the day of the accident, she stated that she thought she was about to sit down when the bus was struck from the rear, but after viewing a video of the accident, she realized that she was already seated at the time of impact. She testified that she heard a "boom" and looked over her left shoulder to see what had happened. Ms. McNeil stated that she jerked her head in the direction of the noise, and when her "adrenaline went down" her body "went to shaking and stuff." The bus driver recorded the names of the passengers and told them they would have to ride on another bus to their destination. Ms. McNeil stated that she saw one of the other female passengers taken off in an ambulance.
Ms. McNeil testified that she hurt her back, right shoulder, neck and hip in the accident. The pain prevented her from riding her bike, walking her dog and cleaning her home. She said the pain was so miserable that she could not eat or sleep.
Initially she saw Dr. Altman in March, who was recommended by an attorney who contacted her after the accident. Dr. Altman gave her an injection on March 11, 2013, which relieved the pain in her hip, and prescribed physical therapy. Dr. Altman referred her to Dr. Allen Johnston, who she saw for the first time on April 7, 2014.
Dr. Johnson prescribed pain medication and referred her to Dr. Kenneth Vogel in January 2015. Ms. McNeil did not see Dr. Vogel until July 30, 2015. In addition to prescribing pain medication, Dr. Vogel eventually recommended a discectomy, which she had on March 22, 2016. Following surgery, she was prescribed physical therapy three times per week, but only attended ten sessions between May and October of 2016.
On cross-examination, Ms. McNeil testified that she twisted in her seat when she heard a loud noise behind her. Defense counsel questioned Ms. McNeil about the discrepancies in her deposition testimony taken on May 29, 2015, and her testimony at trial. Ms. McNeil admitted that after viewing the video she was mistaken when she said in her deposition that she was not yet seated or that she hit her back on the seat when the impact occurred. She insisted, however, that she did injure her hip and back when she twisted too quickly to see what had caused the noise, but could not explain how as she was not a doctor.
Ms. McNeil admitted that she filed suit against Moler Beauty College in 1989 after she fell from a chair that collapsed. She claimed to have injured her back in that incident. In her deposition, Ms. McNeil also reported that she was involved in an automobile accident in 1991, and filed suit claiming a back injury.
*32 Dr. Kenneth Vogel, who was accepted as an expert neurosurgeon, testified at trial. He testified that on July 30, 2015, he evaluated Ms. McNeil, who was 48 years old at the time of the visit, for lumbosacral pain. She related a history of a bus accident on February 18, 2013, in which she was thrown about. At this visit, Ms. McNeil continued to complain of low back pain, with related insomnia and a general inability to enjoy life. She told Dr. Vogel of her prior accident in 1989, but reported the pain was temporary and completely resolved. After a physical examination, he determined that she had either a herniated disc or a lumbar injury, which he related to the bus accident.
Dr. Vogel stated that as Ms. McNeil was asymptomatic for 23 years (time between the prior and current accident), in all probability the bus accident caused her complaints of pain. When Ms. McNeil returned in mid-August, she had increased spasms in her low back she claimed were caused by walking up and down stairs. When she returned in mid-September, she had bilateral leg pain, and related that she found the pain intolerable. He prescribed a CT scan and discogram, and referred her to a pain management clinic.
Dr. Vogel saw Ms. McNeil again in February of 2016. She reported the same complaints of low back pain and bilateral leg pain. The MRI revealed herniation at L4-5 and L5-S1. Ms. McNeil was admitted to the hospital in March 2016 for a discogram, which confirmed the previously diagnosed disc herniation. On March 22, 2016, Dr. Vogel performed a microsurgical discectomy at L4-5 and L5-S1. He testified that because of the three-year interim between the accident and the surgery, he projected only a fifty-fifty chance of complete recovery.
Dr. Everett Robert, the physician who performed an independent medical examination of Ms. McNeil, and who was accepted as an expert in neurosurgery, also testified at trial.
Dr. Robert examined Ms. McNeil on January 27, 2016. Prior to her visit, Dr. Robert reviewed Ms. McNeil's prior medical records from the Metropolitan Health Group (Dr. Alden), and Drs. Johnson and Vogel. He also reviewed the accident report, plaintiff's deposition, and a copy of the lawsuit plaintiff had filed against Moler Beauty College. At the visit, Ms. McNeil related a history of the February 18, 2013 bus accident, in which she claimed to have injured her back on the bus seat. She told Dr. Robert that she had no immediate pain, but developed pain the next day. She denied any prior accidents.
Upon physical examination, Dr. Robert determined no objective findings of injury, stating that Ms. McNeil had good strength in her arms and legs and had normal reflexes. Dr. Robert did, however, note several inappropriate responses during the examination. For example, Ms. McNeil would jump and twist her whole body before Dr. Robert struck her to test reflexes. She also claimed to have back pain when the doctor put his hand on the top of her head, wincing and acting like she would fall. Dr. Robert explained that this is an abnormal response as pressure on top of the head should not transfer to the back. The examination revealed no spasms in the lumbar spine.
The doctor explained that pain can only be diagnosed by what the patient reports. The MRI report that Dr. Robert reviewed indicated that spinal changes in the patient were degenerative, and not caused by trauma. Based on his physical examination, the MRI report indicating degenerative changes, and Ms. McNeil's inappropriate responses to his examination, he concluded that Ms. McNeil had suffered no traumatic injury.
*33 Dr. Robert issued another report on July 15, 2016, after Dr. Vogel had performed the discectomy, and after reviewing additional documentation from Drs. Vogel and Johnston. He also reviewed the discogram report. Dr. Robert testified that Ms. McNeil's complaints of pain were inconsistent with disc injury. He was of the opinion that Ms. McNeil should not have had any surgery.
After his deposition, Dr. Robert was provided with additional information from Ms. McNeil's March 13, 2016 surgery, including a radiology report and the actual discogram. He issued another report in May of 2017, wherein he maintained his position that Ms. McNeil should not have had a discectomy.
On cross-examination, Dr. Roberts admitted that at the time of his examination of Ms. McNeil, he was not yet board certified. He maintained his position that Ms. McNeil's surgery was unnecessary.
The trial court signed a judgment on October 10, 2017, dismissing Ms. McNeil's claims, with prejudice. In its accompanying Reasons for Judgment, the trial court stated that Ms. McNeil failed to establish a causal relationship between the bus incident and her injuries by a preponderance of the evidence. The trial court specifically relied upon the video introduced at trial, which indicated that none of the people on the bus appeared to have been injured.
Ms. McNeil appeals that judgment.
DISCUSSION:
The trial court found that Ms. McNeil failed to prove by a preponderance of the evidence that there was a causal relationship between the injuries she allegedly sustained and the accident of February 18, 2013. Ms. McNeil argues on appeal that this was error, as she presented uncontroverted medical evidence that, more probably than not, she was injured as a result of the bus accident in 2013. She also argues that she presented evidence that the bus was struck by a truck and that other persons on the bus were injured. She further argues that it was legal error for the trial court not to apply the Housley presumption[3] , as she was asymptomatic for an extended period of time between incidents. Thus, because of this legal error, this Court must review the case de novo .
Defendants argue that based on the surveillance video and the numerous discrepancies between Ms. McNeil's deposition testimony and her trial testimony, it was within the trial court's discretion to discredit her testimony about the cause of her injuries. Accordingly, our review should be limited to a manifest error/clearly wrong analysis of the findings of fact. We agree.
"Causation is a factual issue." Levine v. Allstate Ins. Co., 17-0896, p. 2 (La.App. 4 Cir. 4/18/18), 243 So.3d 1286, 1288, (citing D'Angelo v. Guarino , 10-1555, p. 6 (La.App. 4 Cir. 3/9/12), 88 So.3d 683, 688 ). "Although the Louisiana Constitution extends appellate jurisdiction in civil cases to both law and facts, the exercise of this power is limited by the jurisprudential rule that factual determinations of the trier of fact will not be set aside by a reviewing court unless they are manifestly erroneous or clearly wrong." Id., (citing Brewer v. J.B. Hunt Transp., Inc., 09-1408, p. 9 (La. 3/16/10), 35 So.3d 230, 237 ). "To reverse a factfinder's determination ... an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong."
*34 Levine , 17-0896, pp. 2-3, 243 So.3d at 1288, (citing Brewer, 09-1408, 35 So.3d at 239 ).
The jurisprudential presumption to which plaintiff refers was first explained in Housley v. Cerise , in which the Louisiana Supreme Court stated:
[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Housley, 579 So.2d 973 (La. 1991), (quoting Lucas v. Ins. Co. of N. America , 342 So.2d 591, 596 (La. 1977) ); also see , Lawrence v. Gov't Employees Ins. Co., 13-1296, p. 27 (La.App. 4 Cir. 10/15/14), 151 So.3d 917, 934.
To apply this presumption, one must first find that an accident occurred. Ms. McNeil argues that there is no dispute that the truck being driven by Mr. Trosclair struck the rear corner of the bus. The trial court agreed that there was a collision. However, the trial court relied heavily on the video introduced at trial, stating in its written reasons that "among the testimony evidence, and arguments of counsel, most notable is the video of the incident...." The trial court found that the bus surveillance video did not show any passenger on the bus being knocked down or tossed about, falling down, etc. The court noted in particular that the passenger standing at the fare box machine did not "even lose his balance."
This Court, in our review of all of the evidence presented, also viewed the video. It shows several passengers, including Ms. McNeil, turning and looking in the direction of the rear of the bus and resuming what they were doing. Additionally, our review of the plaintiff's trial testimony and the excerpts of the deposition testimony introduced at trial indicate numerous inconsistencies in Ms. McNeil's version of the events on the day of the accident. For example, in her deposition testimony she stated that she was attempting to move to the window seat from the aisle when the impact of the truck jerked her to a seated position, causing her to hit her back on the seat. She claimed she injured her hip when it struck the middle portion of the seats, as she was knocked down into the seat. To the contrary, the video showed Ms. McNeil completely seated in the aisle seat facing forward at the time of the incident. She turned to look over her left shoulder once, and then once again. She did not fall, nor did she strike her back, shoulder or hip on the bus seat. At trial, when asked about the difference in her deposition testimony and the video, she answered that she must have been mistaken about the events surrounding her injury, but insisted that she did hurt her shoulder, hip and back when she twisted to see what caused "the boom." She could not explain her answer other than to state that she was not a doctor.
Ms. McNeil notes that the defendants focus on the discrepancies between her deposition testimony and the events depicted on the video. She complains that the defendants failed to produce the video prior to her deposition such that she could have "refreshed her memory" about the "precise details of her body movements." The defendants argue that the video was not in their possession, and therefore they could not have produced it in discovery. They note that the video was produced by defendant RTA to all parties at the same time, and although it was after Ms. McNeil's deposition, it was produced before she answered supplemental discovery and before her independent medical examination.
*35 Despite viewing the video, Ms. McNeil continued to give contradictory accounts of how she was injured. Our review of Ms. McNeil's testimony and the video supports the defendants' position.
Additional questioning of Ms. McNeil at trial revealed that she did not tell her treating physicians about an automobile accident in which she was involved in 1991 as a passenger in a car that was rear-ended. She was taken to the hospital for back injuries and was treated by a chiropractor. A lawsuit was filed, which was settled. When asked why she did not tell Dr. Johnston or Dr. Vogel about that accident, she replied that they did not ask.
Defendants argue that Dr. Vogel's testimony regarding causation should be discounted as he relied on the incomplete history of previous injuries related to him by Ms. McNeil. They rely on Catalano v. Roberts, 94-635 (La.App. 5 Cir. 1/18/95), 650 So.2d 330, in which the court discounted the plaintiff's medical evidence as he had failed to reveal other accidents and injuries to his treating physicians. Defendants also argue that Dr. Vogel's conclusions are based on Ms. McNeil's grossly exaggerated version of the events of February 18, 2013.
Ms. McNeil argues that the incomplete history is of no moment, as the previous accidents in which she was involved pre-dated this incident by over twenty years. Instead, she argues that in addition to her medical evidence, there was evidence that the bus driver and another passenger were injured.
Again, our review of the video indicates that the bus driver turned his head to look at his side view mirror. He got up from the driver's seat and exited the bus. It is clear that he did not see the truck hit the bus, but only heard a noise. Further, although the bus driver testified he made a claim for damages and settled it, that testimony alone does not prove he was injured. Likewise, the fact that another passenger may have been taken off in an ambulance does not prove that Ms. McNeil was injured.
The trial court made the factual finding that there was insufficient evidence to support Ms. McNeil's claim that she was injured in the incident on February 18, 2013. After a thorough review of all the evidence presented, we cannot say that the trial court was clearly wrong or manifestly erroneous in finding that Ms. McNeil failed to prove that the bus incident of February 18, 2013, caused the injuries of which she complains.[4]
Accordingly, for the reasons set forth above, we affirm the judgment of the trial court.
AFFIRMED

The judgment references all defendants originally named in the suit. However, the only defendants represented at trial were Jason Trosclair, United Rentals (North America), Inc., and Ace American Insurance Company.

The bus sustained damages of $ 1,426.81.

Housley v. Cerise, 579 So.2d 973 (La. 1991).

As we find no error in the trial court's ruling, we pretermit discussion of plaintiff's third assignment of error.